UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| AFFILIATED FM INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:21-CV-233-MAS |
| | ) | |
| RAM CONSTRUCTION SERVICES OF MICHIGAN, INC. ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Third-Party Defendants Lexington Opportunity Fund, LLC ("LOF"), The Webb Companies ("Webb"), and Yeiser Structural, LLC ("Yeiser", collectively ("Movants") have filed a motions to dismiss all claims [DE 62, 66] in Third-Party Plaintiffs RAM Construction Services of Michigan, Inc. ("RAM") and Walker Parking Consultants/Engineers, Inc.'s ("Walker," collectively with RAM, "Respondents") Third-Party Complaint [DE 55]. Respondents filed their opposition [DE 73] and Movants replied [DE 79, 80].

As detailed below, the Court grants in part and denies in part Movants' motions.

**I.  RELEVANT FACTUAL BACKGROUND**

The dispute centers on the collapse of a two-story parking garage ("Parking Garage") located at 200 West Vine Street in Lexington, Kentucky between South Upper Street and South Mill Street. The lawsuit generally concerns the efforts by those involved to apportion fault.

**A.  WALKER INSPECTION & RAM CONSTRUCTION**

In the summer of 2017, Walker was hired by the Parking Garage property manager, Friedman Real Estate Group-KY LLC ("Friedman"), to perform a condition assessment of the

1

structure. [DE 55, Page ID# 329]. "Walker's report noted various conditions in the structural members of the Parking Garage, including the inverted tee girders which support the precast tees throughout the Parking Garage, and also made certain recommendations for repair of the Parking Garage." [DE 55, Page ID# 329].

In January 2018, Friedman hired Walker to create a plan to remediate the various problems cited by Walker in its report. [DE 55, Page ID# 330]. RAM was ultimately hired to perform the work outlined by Walker with construction commencing in August 2018 and finishing in December 2018. [DE 55, Page ID# 330].

**B.     YEISER INSPECTION**

In March 2019, LOF purchased the Parking Garage. [DE 55, Page ID# 330]. "Because LOF is an entity with no actual employees, LOF utilized employees and owners of the Webb Companies to inspect, maintain and operate the Parking Garage." [DE 55, Page ID# 330].

That fall, Yeiser was hired by LOF/Webb to inspect the Parking Garage and make suggestions of possible repairs. [DE 55, Page ID# 330]. Yeiser's inspection report was tendered on October 29, 2019. [DE 55, Page ID# 330]. Yesier noted that the "precast concrete 'T' [sic] are in good overall condition." [DE 55, Page ID# 330].

One year later, in August of 2020, Yeiser was again directed to perform an inspection of the Parking Garage, including examining a beam supporting an inverted tee girder in the ceiling on the bottom level of the Parking Garage. [DE 55, Page ID# 330]. Yeiser responded that the "column is the secondary issue. The beam to the right is in significant disrepair and deterioration". [DE 55, Page ID# 330]. Yeiser recommended "immediate" steps be taken, including the placement of a temporary support under the beam at issue. [DE 55, Page ID# 331].

According to the Third-Party Complaint against LOF, Webb, and Yeiser, none of these parties took any steps to place a temporary support under the beam, suspend operations at the Parking Garage, and/or alert public officials. [DE 55, Page ID# 331].

**C.   PARKING GARAGE COLLAPSE**

The Parking Garage partially collapsed on February 18, 2021. [DE 55, Page ID# 331]. "An investigation revealed that the collapse occurred when the beam, which was the subject of the Aug. 28, 2020 inspection requested by Webb and performed by Yeiser, failed." [DE 55, Page ID# 331].

## II.   ANALYSIS

**A.   STANDARD FOR MOTION TO DISMISS**

The Court must assess whether the Third-Party Complaint alleges sufficient facts to establish plausible claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing a claim's plausibility, the Court must construe the complaint in the nonmoving party's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the nonmoving party. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir.2011). The pleading does not have to include "detailed factual allegations." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Rather, the complaint must provide the general factual "grounds" entitling the claimant to relief, and not just make "a formulaic recitation of the elements of a cause of action." *Id*. (quotation omitted).

**B.   INDEMNIFICATION CLAIMS**

The Kentucky Supreme Court has held that a party may recover under common law indemnity in two classes of cases: "(1) where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond

3

for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (citations omitted). In interpreting this standard, the *Degener* court evaluated the cases before it by distinguishing between the "active wrongdoer[s]" and the parties whose liability was "premised solely upon [their] failure to prevent" the torts. *Id*. at 781. In the cases cited by the *Degener* court, the parties who failed to prevent the harm were entitled to common law indemnity from the parties who actively caused the harm. *Crime Fighters Patrol*, 740 S.W.2d at 938; *Brown Hotel Company v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (Ky. 1949). Yet, "[t]here is no simple, categorical way to determine when indemnity applies. Although courts have devised labels to describe the kinds of tortfeasors to whom indemnity applies—active/passive, primary/secondary—the Kentucky Supreme Court has warned against focusing too closely on these labels rather than on the 'underlying equitable principles and the operative facts behind these labels.'" *Brasfield & Gorrie LLC v. Harrod Concrete and Stone Co.*, No. 3:18-cv-00066-GFVT, 2020 WL 3086601, at * 3 (E.D. Ky. June 10, 2020) (quoting *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 938 (Ky. 1987)). Because indemnity transfers all liability to one party, "[a]n indemnity claim must allege one tortfeasor's negligence is different in kind—categorically worse—than the other tortfeasor's." *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013). But where the parties are *in pari delicto*, described as both "guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff's damages," indemnity is not appropriate. *Degener*, 27 S.W.3d at 778.

      The parties agree they are not *in pari delicto* given the sequence of events. Thus, to the extent a claim exists, it exists under common law indemnity. The parties also agree that of the two

types of indemnification at issue as set forth in *Degener*, the focus is on the second category: active and passive actors in causing the Parking Garage collapse. Obviously, RAM and Walker believe they are the passive actors while LOF, Webb, and Yeiser counter the same.

In support of the active versus passive distinction, all parties cite the facts and analysis set forth in oft-cited cases of *Degener* and *Brown Hotel*. In *Degener*, the Kentucky Supreme Court addressed two different cases consolidated for appeal. 27 S.W.3d 775 (Ky. 2000). First, a clinic was sued because a doctor there had sexually harassed a clinic employee. Second, a construction company was sued after the explosion of a bomb injured certain police officers. In both instances, the Kentucky Supreme Court held that the clinic and the construction companies were passive parties to the active parties of the harassing doctor and bomb makers, respectively. *Id*. at 781. In *Brown Hotel*, a Pittsburgh Fuel employee working on the premises of the Brown Hotel left a manhole lid unsecured and a pedestrian was injured when he stepped on the lid. 224 S.W.2d 165 (Ky. 1949). The Brown Hotel was entitled to indemnity from Pittsburgh Fuel whose negligence was the "primary, efficient and direct cause of the accident." *Id*. at 167.

Another persuasive authority is to examine the Restatement that undergirds Kentucky's analysis of indemnification. "Kentucky courts have [] relied on the factual illustrations provided by the RESTATEMENT (SECOND) OF TORTS and the RESTATEMENT OF RESTITUTION as guideposts for determining when indemnity applies. The RESTATEMENT OF RESTITUTION provides:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, **unless after discovery of the danger, he acquiesced in the continuation of the condition**.

RESTATEMENT OF RESTITUTION § 95 (1937)." *Brasfield & Gorrie*, 2020 WL 3086601, at * 3-4 (emphasis added).

5

Here, Movants use *Degener* and *Brown Hotel* to argue that they are akin to the clinic, the construction company, and the Brown Hotel. Namely, the actual harm was caused by Respondents when they failed to fully address the faulty beam in 2018 during their review and construction process. The Court would agree with Movants if the facts stopped there. But, for Movants, the allegations continue. Respondents clearly alleged that, after purchasing the Parking Garage in 2018, Movants requested that Yeiser evaluate the Parking Garage on two occasions, including in August 2020 where Yeiser specifically identified the beam at issue as the primary problem that LOF/Webb needed to address immediately. LOF/Webb took no steps to remediate the problem despite the notice. And given the Parking Garage collapsed approximately six months later, Movants had sufficient time to take remedial actions.

Upon receiving notice of the hazardous condition, having enough time to remediate the condition, and then taking no such steps, Movants became the active party while Respondents became the passive party. Stated another way, "after discovery of the danger, [Movants] acquiesced in the continuation of the condition." RESTATEMENT OF RESTITUTION § 95 (1937). The critical difference between Movants and the clinic, the construction company, and the Brown Hotel discussed above is the latter parties did not have notice of the condition. Yeiser argues that "there is no Kentucky authority that a claim of reckless inaction on the part of a third-party defendant entitles a third-party plaintiff to common-law indemnity." [DE 80, Page ID# 790]. That is simply not true. Kentucky law is clear; if a party has notice of a hazardous condition, has sufficient time to correct that condition, and chooses inaction, indemnification lies against that party. Palmore's Kentucky Instructions to Juries emphasizes this very point when discussing *Deneger* and *Brown Hotel*:

> In rare instances there will be a jury issue. The example presented is based loosely upon the facts of the venerable *Brown Hotel Company v. Pittsburgh Fuel Co.*, 224

6

> S.W.2d 165 (Ky. 1949).  Initially, the jury would have been instructed to find that if the manhole was left uncovered for a sufficient period of time that the hotel should have discovered it, then the hotel is liable to the original injured plaintiff. Indemnity would lie because the fuel company had left the manhole uncovered, thus causing the hotel's liability.  **However, had the hotel actually discovered the danger and failed to correct it, then its conduct would not have been secondary and indemnity [of the hotel against the fuel company] would not have been available.**

Palmore, KENTUCKY INSTRUCTIONS TO JURIES, § 46.05, cmt. (2013) (emphasis added).  *See also Wayne Cty. Hosp., Inc. v. Jakobson*, 943 F. Supp. 2d 725, 738 (E.D. Ky. 2013) (finding the same Palmore instruction as persuasive in relation to notice and indemnification).

In the end, the Third-Party Complaint alleges that a hazardous condition existed in the Parking Garage, Respondents knew of the hazardous condition for, at minim, nearly six months, and took no steps to remedy the condition.  Although Respondents may ultimately contest these facts, the Court must assume these facts are true at this juncture.  Given that the insurance company has brought an action against Respondents, they have filed the Third-Party Complaint against Movants seeking indemnification.  Such a claim is properly pleaded.

C.  CONTRIBUTION AND APPORTIONMENT CLAIMS

"Indemnity, contribution, and apportionment are three related yet distinct concepts in Kentucky law. … All three doctrines distribute responsibility for damages among various defendants based on their relative fault.  But the doctrines stem from different sources of law, function in different ways, and apply in different situations.  Each came about at a different point in the evolution of Kentucky's law of negligence, yet all three remain in force today in one shape or another."  *Stanford*, 948 F. Supp. 2d at 743-44.

The Court has fully examined indemnification above.  In addition to indemnification, Respondents have asserted claims sounding in apportionment and contribution in their Third-Party Complaint.  As the Kentucky Supreme Court explained in *Degener*, apportionment grew out of

7

the doctrine of contribution and was eventually codified by the legislature in Ky. Rev. Stat. § 411.182. 27 S.W.3d at 779. "Liability under § 411.182 is several only, so one tortfeasor is never on the hook for the entire amount unless the jury apportions the entire fault to that tortfeasor. Since the statute requires the factfinder to assign a 'percentage of fault' to all the parties to a claim, codefendants do not need to raise crossclaims for apportionment." *Stanford*, 984 F. Supp. 2d at 744. Contribution applies where parties share "equal fault" or are *in pari delicto*. *See Brown Hotel*, 224 S.W.2d at 166. Parties are *in pari delicto* where they are "guilty of concurrent negligence of substantially the same character, which converges to cause the plaintiff's damages." *Degener*, 27 S.W.3d at 778.

Respondents admit, while the indemnification claims are properly pleaded, that their claims for apportionment and contribution should be dismissed. For apportionment, the claim does not need to be raised given the law will allow Respondents an apportionment instruction at trial without the assertion of a claim. [DE 73, Page ID# 690 ("This is because Kentucky's apportionment statute, KRS 411.182, "provides a right to an apportionment interrogatory or finding where underlying substantive fault exists, but it does not provide a substantive cause of action itself." *Griffin v. Honeywell Int'l, Inc.*, No. CIV.A. 13-166-HRW, 2014 WL 6455209, at *4 (E.D. Ky. Nov. 13, 2014).]. Movants agree. [DE 79, Page ID# 786]. For contribution, as already stated above, no party claims that Movants and Respondents acted *in pari delicto*. In fact, the Third-Party Complaint of Respondents is clear the parties did not act *in pari delicto*, which serves as the basis for the indemnification claim.

Consequently, the Court will grant Movants' motion to dismiss Respondents claims of apportionment and contribution.

8

## III.     CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Movants' Motions to Dismiss [DE 62, 66] are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Movants' Motions to Dismiss Count 1 of the Third-Party Complaint as to indemnification is **DENIED**; and

2. Movants' Motions to Dismiss Count 1 of the Third-Party Complaint as to contribution and Count 2 as to apportionment is **GRANTED**.

Entered this 9th day of January, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY