UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| AFFILIATED FM INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil Action No. 5: 21-233-DCR |
| ) | |
| RAM CONSTRUCTION SERVICES ) | |
| OF MICHIGAN, INC., et al., ) | |
| ) | |
| Defendants/Third-Party Plaintiffs. ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| LEXINGTON OPPORTUNITY FUND, ) | |
| LLC, et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On February 18, 2021, a two-story parking garage (hereafter, the "Parking Garage") collapsed in Lexington, Kentucky. [Record No. 55, ¶ 34] Plaintiff Affiliated FM Insurance Company ("Affiliated FM") filed a Complaint against Third-Party Plaintiffs RAM Construction Services of Michigan, Inc. ("RAM") and Walker Parking Consultants/Engineers, Inc. ("Walker"), seeking subrogation of reimbursement payments made to the owner of the Parking Garage, Lexington Opportunity Fund, LLC ("LOF"). [Record No. 55-1] RAM and Walker filed a Third-Party Complaint on October 11, 2022, asserting claims against LOF, The Webb Companies ("Webb"), and Yeiser Structural, LLC ("Yeiser"). [Record No. 55] The Third-Party Defendants (collectively, "the Movants") have now filed motions to dismiss the Third-Party Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

- 1 -

Rules of Civil Procedure. [Record Nos. 62, 66] For the reasons that follow, the Movants' motions to dismiss will be granted, in part, and denied, in part.

### I. Background

WBCMT 2006-C29 West Vine Street, LLC ("WBCMT") previously owned the Parking Garage at issue in this matter, located at 200 West Vine Street in Lexington, Kentucky. [Record No. 55, ¶¶ 11, 24] WBCMT hired Walker, a firm that "provides professional consulting services including planning, design, engineering and restoration for various building structures," to assess the condition of the Parking Garage during the summer of 2017. [*Id.* at ¶¶ 18, 19] Walker conducted the assessment and submitted a report of its findings, noting the "various conditions in the structural members of the Parking Garage . . . and [making] certain recommendations for repair[s]." [*Id.* at ¶ 20] After reading Walker's report, the Parking Garage's property manager hired Walker to "prepare construction documents for the type of repairs to be performed on the Parking Garage and to make limited observations of the repair work on the Parking Garage." [*Id.* at ¶ 21] WBCMT hired RAM to make the repairs identified in Walker's report. [*Id.* at ¶ 22] RAM began construction in August 2018 and completed its work in December of that year. [*Id.* at ¶ 23] Walker sent a letter to the City of Lexington after RAM finished repairs, certifying "that the repair work had been performed properly and in accordance with Walker's repair drawings." [Record No. 1, ¶ 15]

LOF purchased the Parking Garage on March 4, 2019. [Record No. 55, ¶ 24] It then hired employees from Webb "to inspect, maintain and operate the Parking Garage." [*Id.* at ¶ 25] LOF, through Webb, hired Yeiser to inspect the condition of the Parking Garage and provide recommendations for repairs in the fall of 2019. [*Id.* at ¶ 26] Yeiser employee Jordan

Yeiser conducted the inspection and sent a letter to Webb on October 29, 2019, reporting that the Parking Garage was in "good overall condition." [*Id.* at ¶¶ 27-28]

Webb hired Yeiser to conduct another assessment of the Parking Garage approximately one year later. Specifically it requested that the firm inspect "a column that was connected to a beam supporting an inverted tee girder in the ceiling on the bottom level of the Parking Garage." [*Id.* at ¶ 28] Jordan Yeiser conducted the second inspection and emailed Webb on August 28, 2020, that "[t]here is quite bit [sic] of work that needs to be done to this area. The column is the secondary issue. The beam to the right is in significant disrepair and deterioration." [Record No. 55-6] Yeiser suggested placing a temporary support under the beam at issue, indicating that the parties "can develop a repair method in the coming weeks," but not instructing Webb to shut down or otherwise limit access to the Parking Garage. [Record Nos. 55, ¶¶ 29, 32, 55-6] Webb did not follow Yeiser's suggestion to place temporary support under the beam and did not limit use of the Parking Garage. [*Id.* at ¶ 30]

On February 18, 2021, the Parking Garage partially collapsed. [*Id.* at ¶ 34] An investigation revealed that the collapse was caused by the beam mentioned in Yeiser's August 2020 email. [*Id.* at ¶ 34] LOF filed a claim for coverage with its insurer, Affiliated FM, following the collapse. [*Id.* at ¶ 12] Affiliated FM made payments to LOF for damages resulting from the collapse, pursuant to LOF's insurance agreement. [*Id.* at ¶ 15]

Affiliated FM filed a Complaint against RAM and Walker on September 15, 2021, claiming that the parties were negligent in their failure to repair the Parking Garage and seeking subrogation for its payments to LOF under the insurance agreement. [Record No. 55-1, ¶¶ 23, 28, 31-38] Walker and RAM filed a Third-Party Complaint on October 11, 2022, asserting two counts against LOF, Webb, and Yeiser. [Record No. 55] Count 1 asserts a "common law

indemnity and/or contribution" claim, in which the Third-Party Plaintiffs allege that "any negligence on the part of [RAM and Walker] . . . was passive and secondary to the negligence of LOF, Webb and Yeiser, which was active and primary." [*Id.* at ¶¶ 39-40] Count 2 requests that liability for Affiliated FM's damages be apportioned between the parties to the Third-Party Complaint pursuant to KRS § 411.182. [*Id.* at ¶¶ 41-42] LOF and Webb filed a motion to dismiss the Third-Party Complaint for failure to state a claim on October 28, 2022, and Yeiser filed its motion to dismiss on November 2, 2022. [Record Nos. 62, 66] The motions are fully briefed and are ripe for review. [Record Nos. 73, 79, 80]

## II. Legal Standard

A third-party complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a party's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure when it fails to "state a claim upon which relief can be granted."

Courts reviewing a motion to dismiss must accept all "well-pleaded factual allegations" as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

### III. Analysis

### 1. Indemnification Claim

The Movants argue that the indemnification claim in Count 1 should be dismissed because Walker and RAM "were actively and primarily negligent" by failing to repair the Parking Garage. [Record No. 63, pp. 5-8, 66-1, pp. 4-6] They explain that, although they may have been "negligent in failing to discover the defect" of the faulty beam, indemnification is not proper because the Movants were not the "primary wrongdoers" who "created the danger" that led to the Parking Garage's collapse. [Record No. 66-1, p. 5 (citing *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 167 (Ky. 1949))] Walker and RAM counter that the Movants were the primary tortfeasors in this case because they "had knowledge of [the condition of the beam] in August 2020" and "did not install temporary shoring of the beam" or "notify building authorities of [the] condition." [Record No. 73, p. 6]

Kentucky courts have recognized that a third party may be indemnified under the common law in two scenarios: "(1) [w]here the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (citation omitted).

The parties agree that their case does not involve an agency relationship under the first category. And they do not claim to be *in pari delicto*, defined as being "guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff's damages." *Id.* at 778. Instead, the Movants claim that Walker and RAM were the more

culpable tortfeasors whose actions primarily caused the Parking Garage to collapse, such that indemnity would not be proper, while the Third-Party Plaintiffs claim that the opposite is true.

Determining which party's actions primarily caused a plaintiff's injury is not always clear. *See Brasfield & Gorrie LLC v. Harrod Concrete & Stone Co.*, No. 3:18-CV-00066-GFVT, 2020 WL 3086601, at *3 (E.D. Ky. June 10, 2020) ("There is no simple, categorical way to determine when indemnity applies."). However, the Kentucky Supreme Court's discussions in *Degener v. Hall Contracting Corp.* and *Brown Hotel Co. v. Pittsburgh Fuel* are instructive. *See* 27 S.W.3d at 781; 224 S.W.2d at 167. *Degener* involved two cases that were consolidated for appeal. In one case, police officers sued a construction company for negligently storing dynamite after the officers were injured disarming a bomb made from that explosive material. 27 S.W.3d at 777. In the other case, a technician sued an outpatient surgery clinic for maintaining a hostile work environment when a doctor employed by the clinic sexually harassed her. *Id.* The court held that the construction company and clinic were entitled to complete indemnity from the "active wrongdoer[s]" in their respective cases: namely, the construction company could seek indemnification from the person who made the bomb that injured the officer, and the clinic could assert an indemnification claim against the doctor who engaged in sexual harassment. *Id.* at p. 781. It explained that even if the company and clinic's passive negligence made them secondarily liable to the plaintiffs, they were not *in pari delicto* with the bomb maker and doctor whose actions primarily caused the plaintiffs' injuries. *Id.*

Similarly, in *Brown Hotel Co*. the Kentucky Supreme Court held that the hotel could assert an indemnification claim against a fuel company whose employee failed to secure a manhole on the hotel's premises, when the manhole later injured a pedestrian. 224 S.W.2d at

167. As the court explained, whether a third party can properly be indemnified depends on "the difference in degree and kind of negligence" between the parties. *Id.*; *see also Wayne Cnty. Hosp., Inc. v. Jakobson*, No. 09-44-GFVT, 2013 WL 1870428, at *11 (E.D. Ky. May 3, 2013) ("Thus, under Kentucky law, the nature of the negligence of the parties remains relevant, because if the only negligence attributable a party is passive, secondary, or technical, the parties cannot be said to be *in pari delicto* and an indemnity claim may therefore be appropriate."). While the hotel could have been technically at fault for its "failure to perform some legal duty of inspection and remedying the hazard," its negligence was lesser than that of the fuel company, who "primar[ily], efficient[ly] and direct[ly] cause[d]" the accident by "failing to replace the manhole lid securely." *Id.*

The Restatement of Restitution further clarifies the rules laid out in *Brown Hotel Co.* and *Degener*. *See Brasfield & Gorrie*, 2020 WL 3086601, at *3-4 ("Kentucky courts have relied on the factual illustrations provided by the . . . Restatement of Restitution as a guidepost[] for determining when indemnity applies."). Section 95 of the Restatement of Restitution provides the following:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement of Restitution § 95 (1937).

Particularly relevant here, the Restatement distinguishes a party's failure to make a dangerous condition safe from a party whose failure to remedy the situation constitutes an "acquiesc[ence] in the continuation of the condition." *Id.* Indemnity is proper in the latter

circumstance because imposing liability on a party who was aware of a hazard and failed to correct it is consistent with equitable principles. *See Hengel v. Buffalo Wild Wings, Inc.*, No. 5:11-286, 2013 WL 3973167, at *2 (E.D. Ky. July 31, 2013) ("Under Kentucky law, cases permitting recovery based on indemnity . . . 'are based on principles of equity.'") (citation omitted). The distinction between the failure to discover and failure to correct is discussed in Palmore's Kentucky Instructions to Juries:

> In rare instances there will be a jury issue. The example presented is based loosely upon the facts of the venerable *Brown Hotel Company v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (Ky. 1949). Initially, the jury would have been instructed to find that if the manhole was left uncovered for a sufficient period of time that the hotel should have discovered it, then the hotel is liable to the original injured plaintiff. Indemnity would lie because the fuel company had left the manhole uncovered, thus causing the hotel's liability. *However, had the hotel actually discovered the danger and failed to correct it, then its conduct would not have been secondary and indemnity* [of the hotel against the fuel company] would not have been available.

Palmore Instructions to Juries, § 46.05 (emphasis added).

Here, the Third-Party Plaintiffs have properly pleaded an indemnity claim against the Movants because Walker and RAM alleged that LOF, Webb, and Yeiser were aware of the faulty beam in the Parking Garage and did not attempt to fix it. Unlike in *Brown Hotel Co.*, the Movants did not merely fail to conduct "some legal duty of inspection and remedy[] the hazard." *See* 224 S.W.2d at 167. Instead, the Movants received notice that the beam was in poor condition from Yeiser's August 2020 inspection and continued to do nothing for the next six months, thereby "acquiesc[ing] in the continuation of the condition." Restatement of Restitution § 95.

While the Movants may not have been culpable at the time LOF purchased the Parking Garage, they became the "primary wrongdoer[s]" once they were on notice of the need for

repairs and failed to act accordingly. *Brown Hotel Co.*, 224 S.W.2d at 167. Specifically, LOF and Webb were allegedly actively negligent for not scheduling repairs or closing the Parking Garage, and Yeiser was actively negligent for not alerting authorities of the hazardous conditions in the Parking Garage. Assuming the factual allegations in the Third-Party Complaint are true, Walker and RAM have properly pleaded an indemnification claim by alleging that the Movants were actively negligent when they did not attempt to rectify the poor condition of the Parking Garage. Accordingly, the Movants' motions to dismiss the indemnification claim in Count 1 will be denied.

### 2. Contribution and Apportionment Claims

The Third Party-Plaintiffs also seek contribution from the Movants "for any amount [Affiliated FM] might be awarded against RAM and Walker in this action" as an alternative to their indemnification claim. [Record No. 55, ¶ 41] Additionally, Count 2 of the Third-Party Complaint seeks to apportion liability for Plaintiff Affiliated FM's damages pursuant to KRS § 411.182. [*Id.* at ¶¶ 41-42] The Movants contend that the contribution claim should be dismissed as unnecessary, because Kentucky law requires a jury to "apportion a percentage of fault among all defendants from the amount of damages it deems claimants to be entitled to." [Record No. 66-1, p. 9 (citing KRS § 411.182)] Regarding apportionment, the Movants claim that while the Third-Party Plaintiffs may "preserve an apportionment [jury] instruction by allowing the alleged wrongdoer to be brought into the case by a third-party complaint," they may not seek apportionment as a separate avenue for relief. [*See* Record No. 66-1, p. 6 (citing *Kelly v. Arrick's Bottled Gas Serv., Inc.*, No. 14-118-DLB-EBA, 2016 U.S. Dist. LEXIS 124752, at *8 (E.D. Ky. Sept. 14, 2016) ("[C]ontribution/apportionment is not an independent cause of action."))]. Walker and RAM agree that their contribution and apportionment claims

should be dismissed but assert their right to request an apportionment instruction at trial. [Record No. 73, p. 8]

Contribution, like indemnity, "spring[s] from the idea of equalization of burden." *Brown Hotel Co.*, 224 S.W.2d at 168 (citing 27 Am. Jur. § 2; 13 Am. Jur. § 2). But while indemnity is appropriate when one party is more culpable than the others, contribution applies when multiple tortfeasors are equally at fault. *See id.* ("Under [KRS § 412.030] there may be contribution among parties *in pari delicto*."); *see also Stanford v. United States*, 948 F. Supp. 2d 729, 744 (E.D. Ky. 2013) ("Contribution applies only where the parties share 'equal fault' for the plaintiff's injury.") (citation omitted). Here, none of the parties claim to be *in pari delicto*. Indeed, their refusal to admit equal fault provides the basis of their arguments regarding indemnification, as claiming that their negligence is akin to that of another party would be inconsistent with the distinction between active and passive negligence addressed above. [*See* Record Nos. 63, pp. 7-8, 66-1, p. 5, 73, pp. 6-7.] Because the parties here agree that they are not *in pari delicto*, Count 1's contribution claim will be dismissed.

Additionally, Count 2 of the Third-Party Complaint will be dismissed because Kentucky law does not provide an independent cause of action for apportionment. Under KRS § 411.182(1)(b), courts must instruct juries in all tort actions to allocate "the percentage of the total fault of all the parties to teach claim . . . to each claimant, defendant, [and] third-party defendant." As such, "[i]f there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required." *Floyd v. Carlisle Constr. Co.*, 758 S.W.2d 430, 432 (Ky. 1988) (emphasis omitted). The statute requires juries to apportion liability "where underlying substantive fault

exists, but it does not provide a substantive cause of action itself." *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. 05-185-JBC, 2007 WL 1385943, at *2 (E.D. Ky. May 8, 2007).

Even if KRS § 411.182 provided a separate cause of action for apportionment, Walker and RAM's apportionment claim still would be unnecessary. Because Walker and RAM have properly pleaded an indemnification claim against the Movants, a jury would be required to apportion fault among all parties held liable for Affiliated FM's injury. *See Stanford*, 948 F. Supp. 2d at 744 ("Since the statute requires the factfinder to assign a 'percentage of fault' to all the parties to a claim, codefendants do not need to raise crossclaims for apportionment.") (citing KRS § 411.182(1)(b); *Sommerkamp v. Linton*, 114 S.W.3d 811, 817 (Ky. 2003)).

### IV. Conclusion

Third-Party Plaintiffs Walker and RAM have properly pleaded an indemnification claim by alleging that LOF, Webb, and Yeiser were actively negligent when they discovered the hazardous condition of the lower-level beam and did not perform repairs or notify authorities. Walker and RAM's contribution claim, pleaded in the alternative, will be dismissed because the parties did not act *in pari delicto* in causing the Parking Garage's collapse. Finally, Count 2 of the Third-Party Complaint will be dismissed because Kentucky law does not provide a separate cause of action for apportionment claims.

Based on the foregoing discussion, it is hereby

**ORDERED** that Third-Party Defendants Lexington Opportunity Fund, LLC, The Webb Companies, and Yeiser Structural, LLC's motions to dismiss for failure to state a claim [Record Nos. 62, 66] are **GRANTED, IN PART,** and **DENIED, IN PART**, consistent with this Memorandum Opinion and Order.

Dated: January 19, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky