UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| AFFILIATED FM INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-233-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LNR PARTNERS, LLC, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter involves the partial collapse of a two-story parking garage (hereafter, the "Parking Garage") located in Lexington, Kentucky.  Plaintiff Affiliated FM Insurance Company ("Affiliated FM") filed an Amended Complaint against RAM Construction Services of Michigan, Inc. ("RAM"), Walker Parking Consultants/Engineers, Inc. ("Walker"), Friedman Management Company ("Friedman"), and LNR Partners, LLC ("LNR"), seeking subrogation of reimbursement payments made to the owner of the Parking Garage, Lexington Opportunity Fund, LLC ("LOF").  [Record No. 56]  LNR has filed a motion to dismiss the claims asserted against it in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 78]  For the following reasons, LNR's motion to will be granted.

## I.  Background

WBCMT 2006-C29 West Vine Street, LLC ("WBCMT"), the previous owner of the Parking Garage, hired Walker to evaluate the condition of the property and identify any necessary repairs during the summer of 2017.  [Record No. 56, ¶¶ 8, 15, 16]  Walker assessed

- 1 -

the property and reported "various defects in the structural members of the Parking Garage, including the inverted tee girders that support the precast tees throughout the Parking Garage." [*Id.* at ¶ 18]  Friedman, the Parking Garage's property manager, hired Walker to "prepare construction documents for the structural repairs to be performed upon the Parking Garage." [*Id.* at ¶ 19, Record No. 56-5]  WBCMT contracted with RAM to perform the repairs identified in Walker's report.  [*Id.* at ¶ 21]  The contract specified that RAM was to "restore concrete beams and joists to original condition and appearance."  [*Id.* at ¶ 23]  RAM began construction in August 2018 and completed its work in December of that year.  [*Id.* at ¶ 24]  Walker inspected RAM's work while the project was underway and sent a letter to the City of Lexington upon its completion, certifying "that the repair work had been performed properly and in accordance with Walker's repair drawings."  [*Id.* at ¶¶ 25, 26]

LOF signed an agreement (the "Purchase Agreement") to purchase the Parking Garage from WBCMT on January 30, 2019, after placing a bid on the property at an online auction. [Record Nos. 56, ¶ 27, 78-1]  The Purchase Agreement lists WBCMT as the Seller and provides LNR's address as the "Seller's Notice Address."  [Record No. 78-1, p. 8]  LNR serves as the attorney-in-fact and special servicer for WBCMT's sole member, U.S. Bank National Association.  [Record No. 56-1]

The Purchase Agreement provides that the parties would execute their contract on January 30, 2019, and close on their purchase on March 4, 2019.  [Record No. 78-1, pp. 2, 9] The contract defines the term "Seller" to include "the heirs, personal representatives, successors and assigns of the respective part[y]," and defines the "Seller Group" as including "Seller and its member and such member's trustee . . . special servicer. . . and each of the foregoing parties' past, present, and future . . . assigns and attorneys."  [*Id.* at pp. 12, 29]

The Purchase Agreement addresses LOF's right to evaluate the condition of the Parking Garage, providing that "[u]ntil the Closing Date . . . Buyer . . . shall be entitled to enter upon the property . . . for the purpose of conducting tests and making site inspections and investigations." [*Id.* at p. 13]  The contract also includes language disclaiming warranties on behalf of the Seller.  Specifically, the contract notes that, in purchasing the Parking Garage, LOF was "not relying upon any representation of any kind or nature made by Seller, or any of its employees or agents or Seller Group with respect to the land or the property." [*Id.* at pp. 14-15]  The Purchase Agreement further provides that LOF agrees to purchase the property "as is, where is, and with all faults." [*Id.* at p. 14]

The parties agreed to exclude third party beneficiaries from their contract. [*Id.* at p. 31 ("This agreement is solely between Seller and Buyer and no other party shall be entitled to rely upon any provision hereof for any purpose whatsoever.")]  The Purchase Agreement also provides both parties with the right to terminate the contract if, "after the Execution Date and prior to Closing," certain events occur that would "materially interfere with the present use of [the] Property." [*Id.* at p. 28]

LOF signed the Purchase Agreement on January 30, 2019.  [Record No. 78-1]  After the execution date, but prior to closing, LOF requested information "pertaining to the repair work completed by Walker and RAM on the Parking Garage" from Friedman and LNR. [Record No. 56, ¶ 28]  LNR sent an email on March 4, 2019 in response, confirming that Walker and RAM's work on the Parking Garage "has been completed, in accordance with [Walker's] specifications."  [Record No. 56-8]  LNR also sent LOF copies of Walker's completion letter and Walker's plans and specifications for the Parking Garage.  [*Id.*]  LOF proceeded with the purchase of the Parking Garage that same day, "[i]n reliance upon the

- 3 -

representations of Friedman, LNR, and information contained in the Walker Contract." [Record No. 56, ¶ 34]  The RAM contract was assigned to LOF following LOF's purchase. [*Id.* at ¶ 35, Record No. 56-10]

On February 18, 2021, the Parking Garage partially collapsed.  [*Id.* at ¶ 36]  An investigation revealed that the collapse occurred when a "pre-stressed concrete inverted tee girder in the elevated Parking Garage deck . . . failed."  [*Id.* at ¶ 37]  The investigation also revealed that "the work specified by Walker that was to be performed on the collapsed inverted tee girder was never performed by RAM," and that "Walker failed to confirm that [the specified repair work] . . . was completed by RAM."  [*Id.* at ¶¶ 37-40]  The plaintiff further asserts that "investigation revealed that LNR, Friedman, Walker and RAM knew that the structural repair work . . . was not completed by RAM."  [*Id.* at ¶ 40]  The plaintiff attaches a final billing statement submitted to RAM by Friedman and LNR which "indicate[s] that only 20 square feet out of the specified 290 square feet of beam repair was completed by RAM." [*Id.* at ¶ 41]

Following the collapse, LOF filed a claim for coverage with its insurer, Affiliated FM. [*Id.* at ¶ 12]  Affiliated FM made payments to LOF for damages resulting from the collapse, pursuant to LOF's insurance agreement.  [*Id.* at ¶ 15]

Affiliated FM filed an Amended Complaint against RAM, Walker, Friedman, and LNR on October 11, 2022, seeking subrogation for its payments to LOF under the insurance agreement.  [Record No. 56]  The Amended Complaint asserts three counts against LNR. Affiliated FM first alleges that LNR engaged in fraudulent misrepresentation (Count 1) when it "made a material representation to LOF that the structural repair work on the Parking Garage had been completed," and that LOF relied on its statement when "proceeding with closing the

purchase of the Parking Garage." [*Id.* at ¶¶ 71-77]   The plaintiff next asserts a negligent misrepresentation count (Count 2), alleging that LNR "knew, or certainly should have known" that the information it provided to LOF regarding Walker and RAM's repair work was false. [*Id.* at ¶¶ 78-85]   Finally, Affiliated FM makes a fraudulent concealment claim (Count 3), alleging that LNR intentionally omitted the information regarding "the work completed and not completed by Walker and RAM on the Parking Garage" in its March 2019 email.   [*Id.* at ¶¶ 86-93]

## II.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   A court may dismiss a party's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure when the party fails to "state a claim upon which relief can be granted."

Courts reviewing a motion to dismiss must accept all "well-pleaded factual allegations" as true and "determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 570).  This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'"  *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

### III.  Analysis

### 1.  Does the Court Have Jurisdiction Over This Matter?

The Court first addresses LNR's claim that jurisdiction over this matter is uncertain under 28 U.S.C. § 1332.  [Record No. 78, pp. 14-15]  It contends that LOF should be joined as a "real party in interest" pursuant to Rule 17(a) of the Federal Rules of Civil Procedure because LOF has at least a partial subrogation interest in Affiliated FM's case.  [*Id.* at p. 14]  As the defendant explains, Affiliated FM seeks compensation for the damages resulting from the Parking Garage's collapse, but the plaintiff does not allege whether it has fully compensated LOF for the entire $11,000,000.00 in damages listed in the Amended Complaint.  [*Id.*]  As LNR explains, if Affiliated FM "has only paid LOF a portion of its pled $11 million in damages, yet seeks recovery of the full $11 million, LOF is also a 'real party in interest'" and must be joined to this matter.  [*Id.*]  Affiliated FM claims that LOF is not a real party in interest because LOF "subrogated its rights to [Affiliated FM] subject to [Affiliated FM's] payment of its claim," and that LNR "has not provided any evidence that shows that LOF has not been paid in full on its claim."

When an insurer has paid the entire claim of its insured, the insurer is totally subrogated to the insured's rights and "stands in the place of one whose claim he has paid."  *United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947).  By contrast, "an insurer who pays a part of the loss of its insured is only partially subrogated to the insured's rights."  *Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir. 1993) (quoting 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1546 (2d ed. 1990)); *see also Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81 (1949) ("If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name.  If it has paid only

- 6 -

part of the loss, both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest."). For purposes of diversity jurisdiction, courts consider only the citizenship of the subrogee in a case involving total subrogation but must consider the citizenship of "both subrogee and subrogor" in a case involving partial subrogation. *Pepsico Do Brasil, Ltda. v. Oxy-Dry Corp.*, 534 F. Supp. 2d 846, 848 (N.D. Ill. 2008).

Here, LOF is not a "real party in interest" pursuant to Rule 17(a) because LOF fully subrogated its rights to Affiliated FM. The Amended Complaint establishes that the plaintiff paid LOF for the damages suffered following the Parking Garage's collapse and that Affiliated FM "is subrogated to [the] rights of LOF to the extent of its payments to LOF." [*See* Record No. 56, ¶ 47.] Because LOF lacks a partial subrogation interest in this matter, the Court need not consider LOF's citizenship to ensure that jurisdiction is proper under 28 U.S.C. § 1332.

## 2. Can the Court Consider the Purchase Agreement In Support of LNR's Motion to Dismiss?

The parties dispute whether the Court can consider LOF and WBCMT's Purchase Agreement in evaluating LNR's motion to dismiss. LNR claims that the Court can consider the Purchase Agreement under Rule 10(c) of the Federal Rules of Civil Procedure because the contract is "referenced as a controlling document in the Assignment and Assumption Agreement" and because the terms of the document are central to Affiliated FM's claims. [Record Nos. 78, p. 3 n.1, 90, pp. 3-4] The plaintiff disagrees, claiming that the document is "immaterial to the causes of action" in this matter because only LOF and WBCMT are parties to the Purchase Agreement. [Record No. 83, p. 6] Regardless of whether LNR is an intended

beneficiary of the Purchase Agreement (as will be discussed below), the Court will consider the document because it is integral to the plaintiff's claims.

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). Examination of matters outside the pleadings generally requires conversion of a motion to dismiss to a motion for summary judgment pursuant to Rule 56. *Id.* "However, a court may consider . . . 'public records . . . and exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Id.* at 680-81 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("[I]f extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment.") (citation omitted).

A document outside the pleadings can be considered when ruling on a motion to dismiss when the plaintiff's claims rely on that document, even if the complaint "carefully avoid[s] all mention of the document." *See Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001) (considering Consulting Agreements in motion to dismiss employee restitution action despite plaintiff's failure to mention the agreements, because the complaint "rests on the unstated belief that the Consulting Agreements were voided by administrative decisions"); *Bowens v. Aftermath Ent.*, 254 F. Supp. 2d 629, 638 (E.D. Mich. 2003) (noting that a defendant may introduce a pertinent document that a plaintiff has failed to attach to a motion to dismiss because "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to

dismiss simply by failing to attach a dispositive document.").  *See generally* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (1990) ("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

Here, although Affiliated FM does not refer to the Purchase Agreement in its Amended Complaint, the plaintiff's claims "rel[y] heavily upon [the Purchase Agreement's] terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (considering contracts between recording artists and record companies because contracts were integral to the plaintiffs' copyright claims).  Moreover, the Assignment and Assumption Agreement, in which WBCMT assigns its rights in the Parking Garage to LOF, directly references the Purchase Agreement.  [*See* Record No. 56-10, p. 1.]  The plaintiff cannot preclude the Court from considering the Purchase Agreement merely by "carefully avoiding all mention of the document."  *Yak*, 252 F.3d at 131.  And considering the document is especially warranted given the Sixth Circuit's liberal approach to considering documents outside of the pleadings.  *See Armengau*, 7 F. App'x at 344.  Accordingly, LOF and WBCMT's Purchase Agreement may be considered without converting LNR's motion to dismiss to a motion for summary judgment.

Affiliated FM next contends that even if the Court considers the Purchase Agreement, LNR cannot benefit from the contract's terms as a nonparty.  [Record No. 83, pp. 7-9]  Specifically, the plaintiff claims that LNR is not a party to the Purchase Agreement because (1) "there is no language within the [Purchase Agreement] that serves primarily for the benefit of LNR"; and (2) the Purchase Agreement includes a provision expressly excluding any third

party beneficiaries.  [*Id.* at p. 7 (citing Record No. 78-1, p. 31)]  The plaintiff's argument fails because its first assertion is inaccurate and its second is not dispositive.

Under Kentucky law, "no stranger to a contract may sue for its breach unless the contract was made for his benefit." *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985) (citing *Long v. Reiss*, 160 S.W.2d 668 (Ky. 1942)).  However, a third party beneficiary to an agreement may "in his own right and name enforce a [contractual] promise." *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004); *see also Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595-96 (Ky. 2012) ("[T]he general rule is that a third party beneficiary asserting rights under the contract is subject to any defense that the promisor would have against the promisee.") (citing *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370 (1984)).  A party seeking to receive the benefit of a contract as a third party beneficiary must "produce evidence that the two parties to the agreement intended that the non-party . . . benefit from the agreement." *Preferred Care, Inc. v. Roberts,* No. 5:16-203-KKC, 2017 WL 424868, at *7 (E.D. Ky. 2017); *see also Presnell*, 134 S.W.3d at 579 ("Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right.").

LNR has demonstrated that it was an intended, third party beneficiary under the Purchase Agreement.  The plaintiff's claim that the Purchase Agreement does not have any language "that serves primarily for the benefit of LNR" is simply incorrect.  [Record No. 83, p. 7]  The Purchase Agreement lists LNR's address as the "Seller's Notice Address," suggesting that the parties intended to include LNR in all communications regarding their agreement.  [Record No. 78-1, p. 8]  And the Purchase Agreement specifically references the

Seller Group, which is defined to include WBCMT's assigns and attorneys, several times. [*See id.* at pp. 11, 12, 28, 32 ("The limitations of liability contained in this paragraph shall apply equally and inure to the benefit of all of Seller Group.")]  Most relevant here, the Purchase Agreement states that the plaintiff does not rely on any representations "made by Seller, or any of its employees or agents or Seller Group" in purchasing the property.  [*Id.* at pp. 14-15]  The defendant has sufficiently demonstrated that WBCMT and LOF intended for LNR to receive the benefit of their bargain.

And the fact that the contract includes a provision excluding third party beneficiaries does not affect the Court's conclusion.  *Cf. Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009) (noting that the intent to recognize a third-party beneficiary of a contract "need not be expressed in the agreement itself; it may be evidenced by the terms of the agreement, the surrounding circumstances, or both").  Here, the terms of the Purchase Agreement and other circumstances contradict LOF and WBCMT's recognition that "no other party shall be entitled to rely upon any provision" in their contract.  [Record No. 78-1, p. 31]  The contract refers to LNR, both directly and as the Seller Group, several times, and it confers rights on LNR at least twice.  [*Id.* at pp. 8, 32]  The totality of the evidence supports the conclusion that the parties contracted with LNR in mind, so the defendant may benefit from the terms of the Purchase Agreement as support for its motion to dismiss.

### 3. Fraudulent Misrepresentation

Turning to the merits of LNR's motion to dismiss, the defendant contends that the terms of the Purchase Agreement foreclose the plaintiff's claim of fraudulent misrepresentation (Count 1).  [Record No. 78, p. 8]  Specifically, the defendant asserts that LOF was "contractually obligated to close on the Property" after signing the Purchase Agreement on

January 30, 2019, regardless of later representations made by LNR or WBCMT after the execution date. [*Id.* at pp. 8-9]  The defendant further argues that the plaintiff cannot claim that LNR's statements in its March 2019 email induced LOF in any way because LOF confirmed that it was "not relying on any representation of any kind or nature made by Seller . . . or Seller Group" regarding the Parking Garage when it signed the Purchase Agreement.  [*Id.* (citing Record No. 78-1, p. 14-15)]  The plaintiff counters that the Purchase Agreement does not prevent its false representation claim because the "as is" language in the contract is not enforceable under Kentucky law.  [*Id.* (citing *Bryant v. Troutman*, 287 S.W.2d 918, 920-21 (Ky. 1956))]

A plaintiff claiming fraudulent misrepresentation must plead the following elements: that the defendant made a "(a) material representation (b) which is false (c) known to be false or made recklessly (d) made with inducement to be acted upon (e) acted in reliance thereon and (f) causing injury." *PRC Contractors, Inc. v. Danial*, 354 S.W.3d 610, 613 (Ky. Ct. App. 2011) (citation omitted).  Courts must dismiss a claim for fraudulent misrepresentation for failure to allege that the injured party relied upon the defendant's alleged false representation. *See, e.g., Wilson v. Henry*, 340 S.W.2d 449, 451 (Ky. Ct. App. 1960) (affirming trial court's dismissal of false representation claim because plaintiff did not rely upon the alleged false statement and noting that "[t]he very essence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud.") (collecting cases).

Affiliated FM's fraudulent misrepresentation claim will be dismissed because the plaintiff has not identified any statements from LNR that led LOF to sign the Purchase Agreement on January 30, 2019.  And for any statements made after signing the Purchase Agreement, including the statements contained in LNR's March 2019 email, the plaintiff

- 12 -

cannot demonstrate reliance because the terms of the Purchase Agreement expressly provided that LOF was not relying on any representations regarding the Parking Garage made by WBCMT or LNR.  [Record No. 78-1, pp. 14-15]

Affiliated FM attempts to sidestep the deficiencies in its Amended Complaint by claiming that LNR can be held liable for misrepresentations made after the parties signed the Purchase Agreement.  The plaintiff seems to suggest that even if LNR did not induce LOF to sign the contract on January 30, 2019,  LNR's statements in the March 2019 email induced LOF to "proceed with closing on the Purchase of the Parking Garage" when it otherwise would not have completed the purchase.  [Record No. 56, ¶ 92]  But the language of the parties' contract does not differentiate between the parties' rights and obligations on the date of execution and the date of closing.

The Purchase Agreement recognizes that Buyer and Seller can terminate the contract upon the occurrence of certain events between the execution of the contract and closing.  [*See* Record No. 78-1, p. 28.]   However, it does not provide that the Seller is liable for representations about the property during that time.  Instead, the contract states that by signing the Purchase Agreement LOF acknowledges that it had "sufficient opportunity" to independently investigate the condition of the Parking Garage, and that from that point forward LOF could not rely on the Seller or Seller Group's representations regarding the property.  [*Id.* at pp. 14-15]  The clear terms of the Purchase Agreement exempt LNR from liability for any statements following the execution of the contract, including statements made before closing. Because "the plain meaning of [the Purchase Agreement's] express terms" prevent the plaintiff from alleging fraudulent misrepresentation based on statements made after signing the

Purchase Agreement, the Court cannot interpret the contract to reach a contrary conclusion. *Smithfield Farms, LLC v. Riverside Devs., LLC*, 566 S.W.3d 566, 571 (Ky. Ct. App. 2018).

Affiliated FM also argues that Purchase Agreement's language does not protect LNR from its allegedly false statements because under Kentucky law "one cannot contract against his own fraud." [Record No. 83, p. 9 (citing *Bryant v. Troutman*, 287 S.W.2d 918, 920-21 (Ky. 1956))]  But courts have dismissed false representation claims as precluded by the parties' contract under Kentucky law when the contract included an "as is" provision and there was no evidence that the plaintiff was forced to sign the contract.  *See Cohen v. N. Ridge Farms, Inc.*, 712 F. Supp. 1265, 1269 (E.D. Ky. Mar. 29, 1989) (dismissing plaintiff's claim that defendants misrepresented yearling's condition after finding that language in the contract of sale "put plaintiff on notice that . . . the yearling was being sold 'as-is'"); *Keeneland Ass'n, Inc. v. Eamer*, 830 F.Supp. 974, 986 (E.D. Ky. 1993) (dismissing breach of warranty claim regarding sale of filly because the conditions of sale provided that the horse was sold "as is," and noting that "[a] sales contract that properly excludes all warranties is enforceable") (collecting cases).

Moreover, the plaintiff's reliance on *Bryant v. Troutman* is misplaced.  In *Bryant*, the plaintiffs alleged that a seller's false representations and omissions regarding the condition of a house led them to enter into a purchase agreement, but the seller argued that the plaintiffs' claim was precluded by the "as is" provision in the contract.  287 S.W.2d at 919.  The Kentucky Supreme Court refused to enforce the contract's warranty provision because the plaintiffs could not have discovered the defects in the house by reasonable inspection of the property and because the seller's fraudulent statements "induced [the plaintiffs] to enter into the written contract."  *Id.*

While the seller's misrepresentations led the plaintiffs to purchase the home in *Bryant*, LNR's March 2019 statements did not "procure" the "making of the contract" between LOF and WBCMT because LOF had already agreed to purchase the Parking Garage in January of that year. The plaintiff has not alleged that any of WBCMT's or LNR's statements induced it to enter into the Purchase Agreement. And any further reliance by LOF on LNR's statements regarding the property is precluded under the contract's provisions stating that LOF would not rely on "any representation of any kind or nature made by Seller . . . or Seller Group . . . with respect to the land or the property" and guaranteeing that the property was being sold "as is, and with all faults." [Record No. 78-1, pp. 4, 14-15] The plaintiff cannot claim that LNR's statements in the March 2019 email, however misleading, induced LOF to purchase the Parking Garage when LOF had already agreed to purchase the property "as is." Accordingly, the plaintiff's fraudulent misrepresentation claim will be dismissed.

### 4. Negligent Misrepresentation

LNR next contends that the plaintiff's negligent misrepresentation claim (Count 2) must be dismissed because LOF did not reasonably rely on LNR's statements in the March 2019 email. [Record No. 78, pp. 8-11] LNR claims that LOF's reliance on the defendant's statements were "unreasonable as a matter of law" because LOF had agreed that it would not rely on the Seller or Seller Group's representations in purchasing the Parking Garage. [*Id.* at p. 11 (citing Record No. 78-1, pp. 14-15)] The plaintiff counters that it has sufficiently pleaded the elements of negligent misrepresentation by alleging that LNR had a pecuniary interest in the sale of the Parking Garage, that it told LOF that repair work on the property had been completed when it knew or should have known that information was false, and that LOF relied

on that information in closing on the purchase.  [Record No. 83, p. 13]  The plaintiff's negligent

misrepresentation claim will be dismissed for failure to plead justifiable reliance.

Under Kentucky law, a defendant is liable for negligent misrepresentation when "(1) in

the course of his business or a transaction in which he has a pecuniary interest, (2) supplies

false information for the guidance of others in their business transactions, if (3) he fails to

exercise reasonable care or competence in obtaining or communicating the information and

(4) the plaintiff justifiably relied on the information."  *Republic Bank & Trust Cov. v. Bear,*

*Stearns & Co.*, 707 F. Supp. 2d 702, 713 (W.D. Ky. 2010).  The Kentucky Court of Appeals

has explained that an "elementary element of negligent misrepresentation is justifiable reliance

upon the information."  *Ann Taylor, Inc. v. Heritage Ins. Servs., Inc.* 259 S.W.3d 494, 496

(Ky. Ct. App. 2008).

Affiliated FM's negligent misrepresentation claim fails because LOF's purported

reliance on LNR's statements was unjustifiable as a matter of law.  A plaintiff's reliance on a

defendant's assertions is not justifiable when the parties' agreement "specifically contradicts

that assertion."  *Kingdom Logistics, LLC v. Comm. Bank*, No. 2021-CA-0163, 2022 WL

4282040, at *4 (Ky. Ct. App. Sept. 16, 2022); *see also MacDonald v. Thomas M. Cooley L.*

*Sch.*, 724 F.3d 654, 664 (6th Cir. 2013) ("Unreasonable reliance includes relying on an alleged

misrepresentation that was expressly contradicted in a written contract that a plaintiff reviewed

and signed."); *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky.

Ct. App. 2003) ("[A] party may not rely on oral representations that conflict with written

disclaimers to the contrary which the complaining party earlier specifically acknowledged in

writing.").

LOF agreed in the Purchase Agreement that it would not "rely[] upon any representation of any kind" made by WBCMT or LNR regarding the Parking Garage at the time of LNR's alleged misrepresentations. [Record No. 78-1] Because LOF could not rely on any representations made by LNR under the express terms of its contract with WBCMT, its purported reliance on LNR's representations in the March 2019 email were unreasonable as a matter of law. As a result, the plaintiff's negligent misrepresentation claim will be dismissed as insufficiently pleaded.

### 5. Fraudulent Concealment

Finally, Affiliated FM's fraudulent concealment claim (Count 3) will be dismissed because the plaintiff failed to allege that LNR's failure to disclose the nature of Walker and RAM's repair work induced LOF to sign the Purchase Agreement. A party pleading fraudulent concealment must demonstrate that the defendant: (1) had a duty to disclose a material fact, (2) that the defendant failed to disclose that fact, (3) that the defendant's failure to disclose induced the plaintiff to act, and (4) that the plaintiff suffered actual damages. *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998).

The Court questions whether the plaintiff has adequately supported its conclusory assertion that LNR "possessed superior knowledge" of Walker and RAM's repair efforts when the record reflects that LOF had every opportunity to inspect the Parking Garage before closing on the purchase. *See id.* ("A duty to disclose may arise from a fiduciary relationship, from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same."). *Contra Bryant*, 287 S.W.2d at 920 (refusing to dismiss fraudulent concealment claim when seller failed to disclose

latent defects in home that "could not have been discovered by [the plaintiffs] by the exercise of reasonable care in the inspection of the property").

But regardless of whether LNR had a duty to disclose the nature of Walker and RAM's repairs, Affiliated FM's fraudulent concealment claim will be dismissed because the plaintiff has not alleged that LNR's omissions induced LOF to sign the Purchase Agreement. As discussed above, the plaintiff's reliance on *Bryant v. Troutman* is misplaced. While the real estate purchaser in *Bryant* was induced into a written contract in reliance upon the seller's omissions and false representations, Affiliated FM has not identified any omissions from LNR that affected "the making of the [Purchase Agreement]." *Id.* And LNR's statements and omissions made after signing the Purchase Agreement are not actionable under the terms of the Purchase Agreement.

## IV. Conclusion

In summary, Affiliated FM's fraudulent misrepresentation and fraudulent concealment claims will be dismissed as insufficiently pleaded because the plaintiff has failed to identify any of LNR's statements or omissions regarding the Parking Garage that induced LOF to enter into the Purchase Agreement. The plaintiff's negligent misrepresentation claim will be dismissed because LOF's reliance on LNR's statements regarding the Parking Garage was not justifiable as a matter of law.

Having concluded that all three of the plaintiff's claims against LNR will be dismissed, the Court need not address the defendant's arguments that Affiliated FM did not adequately plead causation or that LNR owed LOF a duty to disclose information regarding Walker and RAM's repair work.

Based on the foregoing analysis and discussion, it is hereby

- 18 -

**ORDERED** as follows:

1.       Defendant LNR Partners, LLC's motion to dismiss [Record No. 78] is **GRANTED**.  Plaintiff Affiliated FM's claims asserted against Defendant LNR Partners, LLC are **DISMISSED**, with prejudice.  This defendant is **TERMINATED** as a party to this action.

2.       This Memorandum Opinion and Order does not affect the remaining claims asserted against Defendants RAM Construction Services of Michigan, Inc., Walker Parking Consultants/Engineers, Inc., or Friedman Management Company.

Dated: February 10, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 19 -